# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO: 20-CR-111 |
| v. | : | |
| SANDOZ INC. | : | VIOLATION: 15 U.S.C. § 1 |
| | : | |

## DEFERRED PROSECUTION AGREEMENT

The United States Department of Justice, Antitrust Division ("United States") and Sandoz Inc. ("Sandoz" or the "Company"), a corporation organized and existing under the laws of Colorado, by and through its undersigned representative, pursuant to authority granted by its board of directors, enter into this Deferred Prosecution Agreement, the terms and conditions of which are as follows:

<u>Criminal Information and Acceptance of Responsibility</u>

1.      Sandoz acknowledges and agrees that the United States will file a four-count criminal Information in the United States District Court for the Eastern District of Pennsylvania. The Information will charge Sandoz with the following four counts, all in violation of the Sherman Antitrust Act, 15 U.S.C. § 1: (1) conspiring with Company A, a generic drug company with its principal place of business in New York, to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States, from at least as early as March 2013 and continuing until at least December 2015; (2) conspiring to suppress and eliminate competition with Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.), a generic drug company with its principal place of business in New Jersey, by agreeing to allocate

1

customers for, and stabilize, maintain, and fix prices of, benazepril HCTZ sold in the United States, from at least as early as April 2014 and continuing until at least September 2015; (3) conspiring with Company B, a generic drug company with its principal place of business in Michigan, to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States, from at least as early as July 2013 and continuing until at least December 2015; and (4) conspiring with Company C, a generic drug company with its principal place of business in Pennsylvania, to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States, from at least as early as July 2013 and continuing until at least December 2015.  In so doing, Sandoz: (a) knowingly waives its right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives for the purposes of this Agreement and for the purposes of any charges by the United States arising out of the conduct described in the Statement of Facts (attached hereto as Attachment A and incorporated by reference into this Agreement) any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Eastern District of Pennsylvania.  The United States agrees to defer prosecution of Sandoz pursuant to the terms and conditions described below.

2.      Sandoz acknowledges that, under United States law, it is responsible for the acts of its officers, directors, employees, and agents that give rise to the charges in the Information. Sandoz admits, accepts, and acknowledges that the facts set forth in the Statement of Facts are true and accurate.  Should the United States pursue the prosecution that is deferred by this

Agreement, Sandoz agrees that it will neither contest the admissibility of, nor contradict, any of the facts set forth in the Statement of Facts in any such proceeding, including any guilty plea or sentencing proceeding.  Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents.

<u>Parties to and Scope of the Agreement</u>

3.      Sandoz is organized under the laws of Colorado and headquartered in New Jersey. This Agreement binds Sandoz and the United States Department of Justice Antitrust Division.  It specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities.  This Agreement also creates contingent rights and obligations for Sandoz's current officers, directors, and employees as of the date of the signature of this Agreement, who will be collectively referred to as "Covered Individuals."  The contingent rights and obligations for Covered Individuals are limited expressly as described below.

<u>Length of the Agreement</u>

4.      This Agreement is effective for a period beginning on the date on which the Information is filed and ending three (3) years from that date (the "Term"), except for the obligations set forth in Paragraphs 6–7 below.  Sandoz agrees that in the event that the United States determines, in its sole discretion, that Sandoz or its subsidiary Fougera Pharmaceuticals, Inc. ("Fougera") have violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the United States, in its sole discretion, for up to a total additional time period of one year, without prejudice to the United States' right to proceed as provided in Paragraphs 17–21 below.  Any extension of the Agreement extends all terms of this Agreement for an equivalent period.

3

<u>Relevant Considerations</u>

5.      The United States enters into this Agreement based on the individual facts and circumstances of this case.  Among the facts considered were the following: (a) a conviction (including a guilty plea) would likely result in Sandoz's mandatory exclusion from all federal health care programs under 42 U.S.C. § 1320a-7 for a period of at least five years, which would result in substantial consequences to the corporation's employees and customers outside the federal health care programs; (b) Sandoz timely agreed to cooperate in the United States' ongoing investigation into criminal antitrust violations among generic drug manufacturers; (c) Sandoz's cooperation has allowed the United States to advance its investigation into criminal antitrust conspiracies among other manufacturers of generic drugs; (d) Sandoz's cooperation remains ongoing; and (e) this Agreement can ensure that integrity has been restored to Sandoz's operations and preserve its financial viability while preserving the United States' ability to prosecute it should material breaches occur.

<u>Cooperation Obligations</u>

6.      Until the date upon which all investigations and prosecutions, whether of former employees of the Company or other individuals or entities, arising out of the conduct described in this Agreement are concluded, whether or not they are concluded within the three-year period specified in paragraph 4, Sandoz and its subsidiary Fougera shall cooperate fully and truthfully with the United States in the current federal criminal investigation of violations of federal antitrust and related criminal laws involving the production and sale of generic drugs in the United States, and any criminal litigation or other criminal proceedings arising or resulting from such investigation to which the United States is a party (collectively "Federal Criminal Proceeding").  The Federal Criminal Proceeding includes, but is not limited to, a criminal

investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of

a false statement or declaration in, the commission of perjury or subornation of perjury in, the

commission of contempt in, or conspiracy to commit such offenses in the current federal

criminal investigation of violations of federal antitrust and related criminal laws involving the

production and sale of generic drugs in the United States.  The full, truthful, and continuing

cooperation of Sandoz and its subsidiary Fougera will include but not be limited to:

      (a)     producing to the United States all documents, information, and other

materials, wherever located, not protected under the attorney-client privilege or the work-

product doctrine, and with translations into English, in the possession, custody, or control

of Sandoz, that are requested by the United States in connection with the Federal

Criminal Proceeding; and

      (b)     using its best efforts to secure the full, truthful, and continuing cooperation

of the Covered Individuals as may be requested by the United States.  Such efforts will

include, but not be limited to, making these persons available in the United States and at

other mutually agreed-upon locations at Sandoz's expense for interviews and the

provision of testimony in grand jury, trial, and other judicial proceedings in connection

with the Federal Criminal Proceeding.

7.     The full, truthful, and continuing cooperation of Covered Individuals will be

subject to the procedures and protections of this paragraph, and will include, but not be limited

to:

      (a)     producing in the United States and at other mutually agreed-upon

locations, not at the expense of the United States, all documents, including claimed

personal documents, and other materials, wherever located, not protected under the

attorney-client privilege or the work-product doctrine, and with translations into English, that are requested by attorneys and agents of the United States in connection with the Federal Criminal Proceeding;

(b)     being available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with the Federal Criminal Proceeding;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Criminal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503 *et seq.*), or conspiracy to commit such offenses;

(d)     otherwise voluntarily providing to the United States any material or information not requested in (a)–(c) of this paragraph and not protected under the attorney-client privilege or work-product doctrine that he or she may have that is related to the Federal Criminal Proceeding;

(e)     when called upon to do so by the United States in connection with the Federal Criminal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

(f)     when called upon to do so by the United States in connection with the Federal Criminal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401–402), and obstruction of justice (18 U.S.C. § 1503 *et seq.*); and

(g)     agreeing that, if the agreement not to prosecute him or her pursuant to this Agreement is void, the statute of limitations period for any offense will be tolled for the period between the date of signature of this Agreement and six months after the date that the United States gave notice of its intent to void its obligations to that person under this Agreement.

Nothing in Paragraph 7 creates any obligations by or for any person who is not a Covered Individual.

8.     In addition to the obligations described above, during the Term of the Agreement, should Sandoz or its subsidiary Fougera learn of credible evidence or allegations of criminal violations of United States law affecting the competitive process by Sandoz or Fougera, or by any present or former officers, directors, employees, or agents, Sandoz shall promptly report such evidence or allegations to the United States.  Any information that Sandoz thus discloses to the United States will likely include proprietary, financial, confidential, and competitive business information.  Public disclosure of the information and reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the United States' objectives in obtaining such reports.  For these reasons, among others, the information and reports and the contents thereof are intended to remain and shall remain nonpublic, except as

otherwise agreed to by the parties in writing, or except to the extent that the United States determines in its sole discretion that disclosure would be in furtherance of its discharge of its duties and responsibilities or is otherwise required by law.

Penalty and Restitution

9.      The United States and Sandoz agree that Sandoz will pay a monetary penalty in the amount of $195,000,000 to the United States Treasury.  Sandoz must pay this sum within thirty (30) days of acceptance of this Agreement to the United States District Court for the Eastern District of Pennsylvania.  Sandoz and the United States agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 5.

10.     The penalty set forth in Paragraph 9 is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the United States that $195,000,000 is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the United States is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the United States agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. Sandoz acknowledges that no tax deduction may be sought, and agrees that no tax deduction will be sought, in the United States or elsewhere in connection with the payment of any part of this penalty.

11.     In light of the availability of civil causes of action, and civil cases already filed against Sandoz, including the multidistrict litigation *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-md-2724, consolidated in the United States District Court for

8

the Eastern District of Pennsylvania, this Agreement does not include any provision for restitution.

### Conditional Release from Liability

12.     In return for the full and truthful cooperation of Sandoz and Fougera, and compliance with the other terms and conditions of this Agreement:

(a)     The United States agrees that, except as provided by this Agreement, it will not bring criminal charges against Sandoz or Fougera for any act or offense committed before the date of signature of this Agreement, in furtherance of an antitrust conspiracy involving the production or sale of generic drugs in the United States.

(b)     The United States further agrees that, except as provided by this Agreement, it will not bring criminal charges against any Covered Individual for any act or offense committed before the date of signature of this Agreement, in furtherance of an antitrust conspiracy involving the production or sale of generic drugs in the United States, provided that at the time of the conduct, the Covered Individual was (i) employed by Sandoz, (ii) acting within the scope of his or her responsibilities at Sandoz, and (iii) the actions were at least in part in Sandoz's interests.

(c)     Failure by any person or the Company to comply fully with his or her cooperation obligations under Paragraphs 6–8 will void the United States' agreement in Paragraphs 12(a) and (b), and any such person or the Company may be prosecuted criminally for any federal crime of which the United States has knowledge.

(d)     The United States' agreement in Paragraphs 12(a) and (b) does not apply to subornation of perjury (18 U.S.C. § 1622), false statements (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–402), or

9

conspiracy to commit such offenses.  Its agreement in Paragraphs 12(a) and (b) also does not apply to civil matters of any kind, any civil or criminal violation of the federal tax or securities laws or conspiracy to commit such offenses, or any crimes of violence.

Related Administrative Proceedings

13.     Sandoz understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division based upon this Agreement, and that this Agreement in no way controls what action, if any, other agencies may take.  However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of Sandoz as a matter for that agency to consider before determining what action, if any, to take.

Corporate Compliance Program

14.     Sandoz represents that it has implemented and will continue to implement a compliance program designed to prevent and detect criminal antitrust violations throughout its operations, including those of its subsidiary Fougera.  Implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Antitrust Division as of the date of this Agreement for which Sandoz would otherwise be responsible.

Deferred Prosecution

15.     In consideration of: (a) the future cooperation of Sandoz described in Paragraphs 6–8; and (b) Sandoz's payment of a monetary penalty, the United States agrees that any prosecution of Sandoz for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term of this Agreement.

16.     The United States further agrees that if Sandoz fully complies with all obligations under this Agreement, the United States will not continue the criminal prosecution of Sandoz described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire, except for the Cooperation Obligations provided in Paragraphs 6–7.  Within thirty (30) days of the Agreement's expiration, the United States shall seek dismissal with prejudice of the criminal Information described in Paragraph 1.

Breach

17.     If, during the Term of this Agreement, the United States determines, in its sole discretion, that Sandoz (a) committed any felony under United States federal law subsequent to the signing of this Agreement, (b) at any time provided to the United States in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability, (c) fails to cooperate as set forth in Paragraphs 6–8 of this Agreement, or (d) otherwise breached the Agreement, Sandoz shall thereafter be subject to prosecution for any federal criminal violation related to the production and sale of generic drugs in the United States of which the United States has knowledge, including the charges in the Information described in Paragraph 1, which may be pursued by the United States in the United States District Court for the Eastern District of Pennsylvania or any other appropriate venue.  Any such prosecution may be premised on information provided by Sandoz, or its current or former officers, directors, employees, or agents.  Any such prosecution that is not time barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Sandoz notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the expiration of the Term plus one year.  Thus, by signing this Agreement, Sandoz agrees that the

statute of limitations with respect to any such prosecution that is not time barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.

18.     In the event that the United States determines that Sandoz has breached this Agreement, the United States agrees to provide Sandoz with written notice of such breach prior to instituting any prosecution resulting from such breach.  Sandoz shall, within thirty (30) days of receipt of such notice, have the opportunity to respond to the United States in writing to explain the nature and circumstances of such breach, as well as the actions Sandoz has taken to address and remediate the situation, which explanation the United States shall consider in determining whether to institute a prosecution.

19.     In the event that the United States determines that Sandoz has breached this Agreement: (a) all statements made by or on behalf of Sandoz to the United States or to the Court, including the attached Statement of Facts, and any testimony given by Sandoz before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against Sandoz; and (b) Sandoz shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal law or rule that statements made by or on behalf of Sandoz prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed.  The decision whether the conduct or statements of any current director or employee, or any person acting on behalf of, or at the direction of, Sandoz will be imputed to Sandoz for the purpose of determining whether Sandoz has breached any provision of this Agreement shall be in the sole discretion of the United States.

20.     Sandoz acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if Sandoz breaches this Agreement and this matter proceeds to judgment.  Sandoz further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

21.     On the date that the period of deferred prosecution specified in this Agreement expires or on the first business day thereafter, Sandoz, by the President of the Company and the Chief Financial Officer of the Company, will certify to the United States that Sandoz has met its disclosure obligations pursuant to Paragraph 8 of this Agreement.  Each certification will be deemed a material statement and representation by Sandoz to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

<u>Sale or Merger of Sandoz</u>

22.     Except as may otherwise be agreed by the parties in connection with a particular transaction, including specifically as agreed below, Sandoz agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to its consolidated operations, or to the operations of its parent, its subsidiary Fougera, or any affiliates involved in the conduct described in the attached Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the United States' ability to

enforce all provisions of this Agreement, including to determine that it has been breached, is

applicable in full force to that entity.  Sandoz agrees that the failure to include these provisions in

the transaction will make any such transaction null and void.  Sandoz shall provide notice to the

United States at least thirty (30) days prior to undertaking any such sale, merger, transfer, or

other change in corporate form.  The United States shall notify Sandoz prior to such transaction

(or series of transactions) if it determines that the transaction(s) will have the effect of

circumventing or frustrating the enforcement purposes of this Agreement.  If at any time during

the Term Sandoz engages in a transaction(s) that has the effect of circumventing or frustrating

the purposes of this Agreement, the United States may deem it a breach of this Agreement

pursuant to Paragraphs 17–21 of this Agreement.  Nothing herein shall restrict Sandoz from

indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties

or other costs arising from any conduct that may have occurred prior to the date of the

transaction, so long as such indemnification does not have the effect of circumventing or

frustrating the purposes of this Agreement, as determined by the United States.  The United

States agrees that the obligations set forth in Paragraph 22 do not apply to (a) the pending sale by

Sandoz of stock and other assets to Aurobindo Pharma U.S.A., Inc. ("Aurobindo") that was

publicly announced on September 6, 2018, or (b) any divestments entered in connection with

such sale.  As such, Aurobindo and such divestment buyers (or their affiliates) shall not be

subject to any obligations described in this Agreement.

<u>Public Statements by Sandoz</u>

23.     Sandoz expressly agrees that it shall not, through present or future attorneys,

officers, directors, employees, agents or any other person authorized to speak for Sandoz, its

parent, or its subsidiaries, make any public statement, in litigation or otherwise, contradicting the

acceptance of responsibility by Sandoz set forth above or any of the facts set forth in the Statement of Facts.  Any such contradictory statement shall, subject to cure rights of Sandoz described below, constitute a breach of this Agreement and Sandoz thereafter shall be subject to prosecution as set forth in this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to Sandoz for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the United States.  If the United States determines that a public statement by any such person contradicts in whole or in part any fact(s) set forth in the Statement of Facts, the United States shall so notify Sandoz, and Sandoz may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  Sandoz shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, any fact(s) set forth in the Statement of Facts.  This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of Sandoz in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of Sandoz.

24.     Sandoz agrees that if it, its parent, or any of its subsidiaries issues a press release or holds any press conference in connection with this Agreement, Sandoz shall first consult the United States to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the United States and Sandoz; and (b) whether the United States has no objection to the release.  Statements at any press conference concerning this matter shall be consistent with such a press release.

<u>Notice</u>

25.     Any notice to the United States under this Agreement shall be given by personal, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Lauren Elfner, 450 5th Street NW, Suite 11300, Washington, DC 20530.  Any notice to Sandoz under this Agreement shall be given by personal, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the General Counsel of Sandoz Inc., with a copy to its attorney, Mark Calloway, Alston & Bird LLP, 101 South Tryon Street, Suite 4000, Charlotte, NC 28280.  Notice shall be effective upon actual receipt by the United States or Sandoz.

<u>Complete Agreement</u>

26.     This Agreement and its attachment set forth all the terms of this Deferred Prosecution Agreement between Sandoz and the United States.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the United States, the attorneys for Sandoz, and a duly authorized representative of Sandoz.

DATED: 3/2/2020

Respectfully submitted,

BY: _____

Karen D. McDonnell
Vice President and General Counsel
Sandoz Inc.

BY: _____

Lauren M. Elfner
John W. Elias
Matthew Tannenbaum
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 5th Street, NW
Washington, DC 20530
(202) 598-2906

BY: _____

Mark T. Calloway
Teresa T. Bonder
Alston & Bird LLP
Counsel for Sandoz Inc.

BY: _____

for William M. McSwain
United States Attorney
Eastern District of Pennsylvania

17

**Attachment A: Statement of Facts**

From in or about March 2013 and continuing until in or about December 2015, Sandoz Inc. ("Sandoz"), a corporation organized and existing under the laws of Colorado with its principal place of business in Princeton, New Jersey, was engaged in the acquisition, licensing, production, marketing, sale, and distribution of generic drugs.

From in or about March 2013 and continuing until in or about December 2015 ("the relevant period"), Sandoz, through certain of its officers and employees, including an individual within high-level personnel, conspired with other persons and entities engaged in the production and sale of generic drugs to suppress and eliminate competition by allocating customers, rigging bids, and increasing and/or maintaining prices for certain generic drugs sold in the United States. Sandoz, through certain of its officers and employees, including an individual within high-level personnel, engaged in discussions with co-conspirators involved in the production and sale of certain generic drugs that competed with Sandoz products. During these discussions, agreements were reached with co-conspirators to allocate customers, rig bids, and/or stabilize, maintain, and fix the prices of certain generic drugs sold in the United States. Sandoz's sales of generic drugs affected by these conspiracies totaled more than $500,000,000. Specifically:

From in or about March 2013 and continuing until in or about December 2015, Sandoz conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and/or stabilize, maintain, and fix prices of, certain generic drugs, including clobetasol (cream, emollient cream, gel, ointment, and solution), desonide ointment, and nystatin triamcinolone cream, with Company A, a generic drug company with its principal place of business in New York. Generic drugs sold by Sandoz and its co-conspirators, as well as payments for affected generic drugs, traveled in interstate commerce. The business activities of

Sandoz and its co-conspirators in connection with the production and sale of generic drugs affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.  Generic drugs affected by the activities of Sandoz and its co-conspirators were sold to customers in this District.

From in or about April 2014 and continuing until in or about September 2015, Sandoz conspired to suppress and eliminate competition by agreeing to allocate customers for, and/or stabilize, maintain, and fix prices of, benazepril HCTZ with Kavod Pharmaceuticals LLC (f/k/a Rising Pharmaceuticals, LLC, f/k/a Rising Pharmaceuticals, Inc.), a generic drug company with its principal place of business in Saddlebrook, New Jersey.  Benazepril HCTZ sold by Sandoz and its co-conspirators, as well as payments for benazepril HCTZ, traveled in interstate commerce.  The business activities of Sandoz and its co-conspirators in connection with the production and sale of benazepril HCTZ affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.  Benazepril HCTZ affected by the activities of Sandoz and its co-conspirators was sold to customers in this District.

From in or about July 2013 and continuing until in or about December 2015, Sandoz conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and/or stabilize, maintain, and fix prices of, certain generic drugs, including desonide ointment, with Company B, a generic drug company with its principal place of business in Michigan.  Generic drugs sold by Sandoz and its co-conspirators, as well as payments for affected generic drugs, traveled in interstate commerce.  The business activities of Sandoz and its co-conspirators in connection with the production and sale of generic drugs affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

Generic drugs affected by the activities of Sandoz and its co-conspirators were sold to customers in this District.

From in or about July 2013 and continuing until in or about December 2015, Sandoz conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and/or stabilize, maintain, and fix prices of, certain generic drugs, including tobramycin inhalation solution, with Company C, a generic drug company with its principal place of business in Pennsylvania.  Generic drugs sold by Sandoz and its co-conspirators, as well as payments for affected generic drugs, traveled in interstate commerce.  The business activities of Sandoz and its co-conspirators in connection with the production and sale of generic drugs affected by this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.  Generic drugs affected by the activities of Sandoz and its co-conspirators were sold to customers in this District.